## William H. Davis et al. v. Nueces Valley Irrigation Company.

### No. 2021. Decided March 16, 1910.

**1.—Corporation—Sale of Property—Directors—Stockholders.**

While directors of a corporation have no power to authorize the sale of its property to themselves, stockholders acting in good faith may buy from or sell to the corporation; and a resolution by the directors authorizing the president to sell its lands to members of the company should be construed to mean by members, stockholders, and not directors, and so taken was neither void nor voidable. (P. 248).

**2.—Same—Ratification.**

Under authority given by the directors of a corporation for sale of its property by the president to its members, a sale to a stockholder who was also at the time a director, or a sale by the president to his wife whereby it became community property, would be voidable but not incapable of ratification; and a finding by the court that the directors and stockholders unanimously ratified such sale would make same binding upon the corporation. (Pp. 248, 249).

**3.—Ratification—Knowledge of Law.**

It is sufficient for the validity of a ratification that it is made with a full knowledge of all the material facts and not necessarily to show that the parties were apprised of how those facts would be dealt with if brought before a court of equity. (P. 249).

4.—Stockholders—Purchase—Estoppel—Case Stated.

Lands belonging to a corporation were sold by its president by authority of the directors to stockholders, some of whom were also directors. Two of these purchasing directors subsequently sold their stock to new members who were apprised of all the facts and who, after obtaining control of the corporation, caused the directors to ratify all the previous sales except one made to the wife of one who was acting at the time, of such sale as director and president, and whose stock they had so purchased, approving thereby the other sales to directors who still remained stockholders in the company  Held, that the company was estopped from maintaining action to set aside the sale not so ratified by the reorganized board of directors.  (Pp. 245-250).

Error to the Court of Civil Appeals for the Fourth District in an appeal from Bexar County.

The irrigation company brought the action against Davis and wife and Brooks and judgment was rendered for defendants.  Upon plaintiff's appeal the judgment was reversed and rendered in its favor and appellee thereupon obtained writ of error.

*C. C. Clamp* and *Seth S. Searcy,* for plaintiffs in error.—The Court of Civil Appeals erred in holding that a corporation is not bound by the acts of its board of directors in ratifying a voidable act of the former board, but, in order that its action be binding, the entire body of the stockholders must authorize the action taken, or failing that, the entire body of the stockholders must formally ratify such action, Durfee v. Old Colony & F. R. Ry. Co., 5 Allen (Mass.), 230; Revised Statutes of Texas, art. 661; McCullough v. Moss, 5 Denio (N. Y.), 575; San Diego, O. T. & P. B. R. Co. v. Pacific Beach Co., 33 L. R. A., 788; Morawetz Private Corporations, second edition, sec. 525; Hanson v. Dexter, 36 Me., 516; Atlantic Mutual F. Ins. Co. v. Sanders, 36 N. H., 252; 10 Cyc., p. 1072, B-6 (2) p. 1075 (g); Urner v. Sollenberger, 89 Md., 316; Miller v. Matthews, 87 Md., 464; Campbell v. Pope, 96 Mo., 468; Flynn v. Des Moines & St. L. Ry. Co., 63 Iowa, 490; Union Pacific R. R. Co. v. Chicago, R. I. R. R. Co., 163 U S, 564; Clark on Corporations, 486-488; 2 Purdey's Beach on Private Corporations, secs. 737, 737a, 738 and 739; 1 Morawetz Private Co., sec. 474; 3 Clark & Marshall, Private Cor., 2312; Kelly v. Newburyport R. R., 141 Mass., 496.

*A. C. Bullett,* for defendant in error.—To render the act of ratification effective and conclusive, certain considerations are necessary. At the time of the supposed ratification the principal must have been fully aware of every material circumstance of the transaction, the real value of the subject of the contract, and his act of ratification must have been an independent and substantive act, founded on complete information, and of perfect freedom of volition.  And in addition to all this, the cestui que trust must not only have been acquainted with the facts, but apprised of the law, how those facts would be dealt with if brought before a court of equity.  Vincent v. Rather, 31 Texas, 90; Smith v. Estill, 87 Texas, 271; 10 Cyc., 1076; 21 Am. & Eng. Ency. of Law, (2d Ed.), 901; Hoffman Steam C. Co. v. Cum-

berland Coal, etc., Co., 77 Am. Dec., 311; Commercial Bank v. Jones, 18 Texas, 811.

A corporation can not condone the fraud of a director or officer by which the assets of the corporation have been misappropriated, except by the unanimous consent of the shareholders, otherwise, a majority, or a director who might control a majority vote in the corporation, might rob and despoil it with impunity. 10 Cyc., 823, notes 7, 8; Curtin v. Salmon, etc., Ditch Co., 80 Am. St. Rep., 132.

But even if Davis had the power to sell and convey the company lands, he was not authorized to convey them to his wife. If the intention had been to make them her separate property, the income would have belonged to the community, and he, therefore, had a direct personal interest in the transaction. An agent can not, either directly or indirectly, sell to himself. The pretended conveyances to Mrs. Davis stands, therefore, as if it had been executed by one having no authority whatever, and being an act prohibited by law, could not be ratified even if there was evidence of ratification. Green v. Hugo, 81 Texas, 452; 10 Cyc., 821; 2 Pomeroy's Equity (2d Ed.), 1403, note 1.

MR. JUSTICE BROWN delivered the opinion of the court.

We adopt the following statement of the case made by the Honorable Court of Civil Appeals:

"Appellant, a private corporation, brought this suit, on June 7, 1907, against appellees, Wiliam H. Davis, Alletta B. Davis, his wife, and Ida F. Brooks to cancel a deed made by appellant through its president, William H. Davis, on June 4, 1904, to his wife, Alletta B. Davis, and Ida F. Brooks, conveying them two hundred acres of land situated in the county of Dimmitt, and State of Texas, the property of appellant corporation, upon the ground that the conveyance is void, because executed by Davis without authority of the irrigation company.

"In the same action the company sued William H. Davis for the sum of $500, alleged to be due the company by reason of his purchasing, in the name of his wife, while president of the corporation twenty shares of the company's capital stock at $25 per share when its par, as well as market value, was $50 per share.

"The defendants answered by certain pleas in abatement, by general and special exceptions (none of which was called to the attention of the trial court), by pleas of not guilty and general denial, and specially, the matters set out in our conclusions of fact as a ratification of the acts of the company's board of directors and its president, the alleged invalidity of which is the basis of this suit, which acts are also set up as estopping plaintiff from maintaining this action. The case was tried without a jury and the trial resulted in a judgment against the plaintiff as to the land and cancellation of the deed—and in favor of defendants as to everything else involved. From this judgment the plaintiff alone has appealed.

"The facts found by the trial judge are:

"1. That on March 15, 1904, at a regular meeting of the corporation at which were present Dr. W. H. Davis, F. Vandervoort, J. A.

Daugherty and J. S. Taylor, the company passed the following resolution:

"'That the president of the Nueces Valley Irrigation Co. is hereby authorized to sell to the members of this company, land or lands now owned by this company, either to pay debts owing to such members, or for cash at such price as may be agreed upon and to sell with the land perpetual water rights for irrigation purposes. The president is further authorized to borrow money on the property of the company to the amount of five thousand dollars ($5,000) and to give a mortgage on the property of the company.' No money was borrowed by the president for the purpose mentioned in the resolution.

"2.    That on July 4, 1904, the corporation, through its board of directors, Wm. Hope Davis, F. Vandervoort, J. A. Daugherty, J. S. Taylor, at a regular meeting of the corporation authorized its president to negotiate a loan for the company for the sum of $5,000, for the completion of work under progress, and such new work as clearing land, making laterals, fencing, grubbing and other work determined on from time to time as the superintendent and engineer might deem necessary; that at the time said directors owned practically all the stock of plaintiff corporation; that the president failed to negotiate a loan for the purpose of paying its indebtedness and for making the improvements for which the company was indebted.

"3.    That on July 11, 1904, the stockholders of the corporation elected the following directors: Dr. Wm. Hope Davis, Mrs. J. S. Taylor, J. S. Taylor, Mrs Alletta B. Davis and Ida F. Brooks, there being 620 shares of capital stock of the corporation represented, the entire issurance of which did not exceed 700 shares at $50 per share, aggregating $35,000.

"4.    That on June 14, 1904, the president, Wm. Hope Davis, acting under the authority conferred upon him by the board of directors, conveyed 78½ acres of the company's land to Adams, Kirkpatrick and Nicholson for the sum of $.... per acre, to Ida F. Brooks 100 acres at $5 per acre, to Alletta B. Davis 100 acres at $5 per acre, and to Mrs. J. S. Taylor 152¼ acres at $5 per acre; that all the land so conveyed was similar in quality and value except the land conveyed to Adams, Kirkpatrick and Nicholson, which was better and worth more than the other land; that the consideration received from the sales was paid to the company and expended in paying its debts and improving its property; that the corporation made a deed to Mrs. Davis and Ida F. Brooks for the 200 acres conveyed to them which was filed in the deed records of Nueces County on July 18, 1904, and duly recorded; that Alletta B. Davis was the wife of Wm. Hope Davis when she bought the land; and that the respective purchasers took possession of the respective land conveyed to them and have used, occupied and improved the same ever since.

"5.    On July 11, 1904, at a regular meeting of the board of directors, the following resolution was unanimously adopted: 'It is hereby ordered that the sale of 78½ acres of land sold by Dr. Davis to J. E. Adams, Kirkpatrick and Nicholson, 100 acres sold to Ida F. Brooks, 100 acres sold to Alletta B. Davis and 150¼ acres sold to Mrs. J. S. Taylor be and is hereby approved.' On that date W.

P. Dunlap, W. W. Cunningham, Wm. M. Carroll and Henry D. Keith were not members of the corporation.

"6.  On June 30, 1904, there was issued to Mrs. Alletta B. Davis fifty shares of the capital stock of the corporation at $25 per share, which sale was made by virtue of a resolution of the board of directors authorizing the president of the company to sell said stock. This resolution was not entered upon the minutes but the stock book shows the issuance of the stock and the ledger account shows its issuance at the reduced rate of $25 per share, the par value being $50 per share; that the money derived from the sale was used by the company in paying its indebtedness and for improvements; that on said date 'the company owed approximately $3,000, and there was allowed Wm. Hope Davis $242.26 out of the company's funds, by an order of the board of directors, for expenses and outlays incurred by him in its business.

"7.  On July 23, 1904, Wm. Hope Davis, Alletta B. Davis, and Ida F. Brooks entered into a written contract with said Dunlap and his associates, for the sale, by Davis and his associates to Dunlap and his associates, of all the stock owned by them of the company. Which contract provided that Bullitt & Bullitt, attorneys for Dunlap and associates, should investigate the title to the land, condition of the company and its stock. During the investigation Dunlap and his associates had all the records of the corporation, together with all title papers, and stock book, and were fully advised of the conditions hereinbefore enumerated; and thereafter, on September 3, 1904, they purchased all the stock owned by Davis and wife and Ida F. Brooks of the company; and from that date to the present they owned all the stock of the corporation, save that owned by the Taylors, who are still members of the corporation owning the shares heretofore noted.

"8.  On July 10, 1905, the new directors of the corporation, who were said Dunlap and his associates, by resolution, approved and ratified all the acts of the old board and the company except the sale of the land to Mrs. Davis, the resolution being silent as to the purchase of the land by her.

"9.  The land purchased by Mrs. Taylor was shown by the testimony of her husband, J. S. Taylor, to be of similar value to that purchased by Miss Brooks; that in the sale of the land the parties acted in good faith and paid the fair market value therefor. No question was raised by the company as against the sale to Adams, Kirkpatrick and Nicholson or to Mrs. Taylor; that the company received the cash consideration for the various tracts of land sold, as well as for the stock, hereinbefore enumerated, and the money was used in payment of debts and for improvements.

"10.  Prior to September 3, 1904, the date when Dunlap and associates became the owners' of all the capital stock except that owned by the Taylors, the acts and things done and performed by said corporation were, with the unanimous consent of the directors and stockholders mentioned (ratified), and at the time the various acts and things, hereinbefore mentioned, were done, Dunlap and his associates

had no interest in the corporation, either as stockholders or as directors."

The Honorable Court of Civil Appeals said: "Thus acting, they (directors) undertook by resolution to confer upon Davis, the president of the concern, the power to sell its land to themselves, who, acting under the guise of the resolution, did sell to two of the directors, who passed the resolution,- and to himself, or, what is the same thing, to his wife." The resolution, passed by the board of directors of the irrigation company by which they empowered the president of the corporation to sell its lands to "members" of the said company, was neither void nor voidable. The term, members, as used in that resolution should not be construed to include the directors of the corporation. The relation of shareholders to the corporation differs from that of directors, and their right, powers and obligations are classed under different designations by the authorities, both text writers and courts. Shareholders, acting in good faith, may buy from or sell to the corporation, as a general rule, while the directors are not allowed to so deal with it where their official action is necessary to authorize the sale. It would have been unlawful to authorize a sale to themselves, the directors, but lawful to sell to shareholders, and that construction which makes the act lawful should be applied. Twin Lick O. Co. v. Marbury, 91 U. S., 589; Sawyer v. Hoag, 17 Wall., 623.

Miss Ida Brooks was a shareholder in the corporation at the time this resolution was passed and when she made the purchase but does not appear to have been at that time a director, therefore, she was lawfully entitled, as a shareholder, to make purchase of the property according to the resolution of the managing officers of the company. There being no evidence of fraud or unfairness on her part, the sale to Miss Brooks was neither void nor voidable and needed no ratification. However, if she was a director, she occupied the same position as Mrs. Davis, and her purchase was also ratified.

Mrs. Alletta Davis was a shareholder of the corporation when she made the purchase, but not a director at that time, therefore, she was not forbidden by law to purchase the property. The invalidity of her purchase depends upon the question whether or not it was practically a purchase for and on behalf of her husband. If the property purchased by her became a part of the community estate of herself and her husband, then the transaction would be voidable. Parks v. Worthington, 101 Texas, 511. In the case cited this court held that where the property purchased from a trustee would be community property of himself and his wife, who was the purchaser, the sale was voidable at the instance of the cestui que trust. But the court did not reach the question now before us, that is, what would be the effect in case the purchase of the property was with the separate funds of the wife and for her separate use. It was not necessary to decide the question in that case, and, as it is one of importance and of some intricacy, we will not unnecessarily decide it in this case but treat the issue as if the land was part of the community estate.

As we view the facts found by the trial court, the sale to Mrs. Alletta Davis was made valid by a proper and lawful ratification.

The Court of Civil Appeals adopted the findings of the trial court, using this language: "No exception was taken to these findings of fact, nor to evidence upon which they were found, nor was the trial court requested by either party to make any additional findings. Therefore, they will be taken as true, and the naked question of law considered, whether they support the judgment rendered on them." Referring to the tenth finding of the trial court, we find that it is held as a fact in very concise, clear and emphatic language that all of the directors and stockholders unanimously ratified the sale that was made to Mrs. Davis. It will not be disputed, we presume, that the stockholders by a unanimous action, whether in meeting assembled or separately by their several acts, might ratify and confirm such a sale as that and make it valid. 10 Cyc., 1078e. "Presumption of ratification will arise on slight evidence when the act is plainly for the benefit of the principal." 10 Cyc., 1084 (4); Washington Saving Bank v. Butchers & Drovers Bank, 107 Mo., 133; 28 Am. St., 405; 10 Cyc., 1079.

Counsel for defendant in error submits this proposition: "And in addition to all this, the cestui que trust must not only have been acquainted with the facts, but apprised of the law, how those facts would be dealt with if brought before a court of equity."

The rule is expressed by the authorities thus: "The second request sought to incorporate into the doctrine of ratification a new element, namely, that, in order to make a valid ratification, the principal must have known, not only the facts, but also the legal effect of the facts, and then, with a knowledge of both of the law and the facts, have ratified the contracts by some independent and substantive act. This request also was properly refused. It is sufficient if a ratification is made with a full knowledge of all the material facts. Indeed, a rule somewhat less stringent than this may properly be laid down, when one purposely shuts his eyes to means of information within his own possession and control, and ratifies an act deliberately, having all the knowledge in respect to it which he cares to have." (Kelley v. Newburyport Horse Railroad, 141 Mass., 498.)

The evidence shows that at the time Dunlap and associates purchased the principal portion of the stock of the association from Davis and wife and Miss Brooks, the former had possession of the books for investigation and made such examination by their own employe, taking all the time that was desired for a thorough understanding of the books. There is no evidence that there was anything concealed from them or that there was any fact connected with the transaction which would throw doubt upon the fairness of the sale and purchase. With full knowledge of the facts and all the circumstances, they purchased the stock and practically became owners of the irrigation plant. This was in 1904 and they did nothing towards setting aside this sale until the year 1907. The evidence shows that the price paid by Mrs. Davis and Miss Brooks was its fair value at the time; that the cash was paid; that the money was reported to the directors of the corporation within a short time after the sale was made and the money received in consideration of it was expended in the improvement of the plant. Granting that the resolution by which

the directors subsequently approved the sale made to Mrs. Davis and Miss Brooks was not valid, still it was upon the minute books of the association and, after the purchase was made by Dunlap and associates of the stock, the new organization passed a resolution approving all that had been done by the former board of directors, omitting Mrs. Davis' name. Whether these proceedings were of such a character as to legally bind the shareholders who had subsequently become stockholders, it is unnecessary to decide, for they are facts and circumstances which go to show that those who are. now the real plaintiffs in this case, using the name of the corporation, had knowledge of all of the material facts connected with the transaction of which they complain, and should be held to have ratified the sales to Miss Brooks and Mrs. Davis.

Taylor was one of the directors who adopted the resolution authorizing the sale of the land and his wife bought under it more land than either Mrs. Davis or Miss Brooks. Taylor and his wife are permitted to retain the land bought by her and hold their stock in the company. Dunlap and associates bought the stock of Davis, his wife and Miss Brooks, whereby they received the benefit of the purchase money paid by Mrs. Davis and Miss Brooks represented in the stock so purchased. In the name of the corporation it is sought to concede the advantage to Taylor and wife and to exact the strictest enforcement of law against the plaintiffs in error. Such a state of facts does not appeal to the sense of justice of a court of equity. Neither will the law sustain such a claim.

We are of opinion that the Honorable Court of Civil Appeals erred in reversing the judgment of the District Court and in rendering judgment in this cause. It is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*