**Luther THOMAS, d/b/a Thomas Gin Company, Appellant,**

v.

**FIRST NATIONAL BANK OF MISSION, Texas, Appellee.**

**No. 14285.**

Court of Civil Appeals of Texas.

San Antonio.

Oct. 21, 1964.

Rehearing Denied Nov. 25, 1964.

Petry & Fitzpatrick, John W. Claybrook, Carrizo Springs, for appellant.

Strickland, Wilkins, Hall & Mills, Asa V. Bland, Mission, for appellee.

MURRAY, Chief Justice.

This suit was instituted in the District Court of Zavala County by First National Bank of Mission, Texas, hereinafter called Bank, against J. M. Warren, hereinafter called Warren, and Luther Thomas, d/b/a Thomas Gin Company, hereinafter called Gin Company, seeking to recover against Warren the amount of principal, interest and attorney's fees due upon one certain note in the principal sum of $38,465.77, and against Gin Company for the sum of $33,580.65, being the value of 265 bales of cotton alleged to belong to Warren, mortgaged by him to Bank, and allegedly converted by Gin Company. The trial was to a jury and resulted in judgment in favor of Bank against Gin Company for the sum of $21,232.02, together with interest, and providing that the sum of $4,243.56, now

held by Bank, be immediately applied as a credit upon the judgment, and providing further that Bank recover of Warren the further sum of $12,507.72, together with interest, and that Gin Company recover from Warren the sum of $16,988.46, together with interest, from which judgment Gin Company alone has appealed.

The parties agree that this appeal presents but two main questions, to-wit: "(1) Did the trial court err in not submitting an issue to the jury inquiring as to whether or not the defendant, mortgagor, J. M. Warren, was the owner of the cotton in question? (2) Did the trial court err in submitting Appellant's requested Issue No. 1 inquiring whether Appellee had consented *to the sale* of the cotton in question?"

On April 1, 1958, Warren executed a chattel mortgage in favor of Bank covering cotton to be grown upon some 400 acres of land belonging to Four Way Land Company, Inc., located in Zavala County, Texas, to secure Bank in the payment of a $30,-000.00 note. This note was thereafter extended and an additional advance made under the chattel mortgage, which increased the note to the principal sum of $38,465.77. This chattel mortgage was timely recorded in Zavala County.

Thereafter Gin Company made advances to Warren for seed, fertilizer, insecticides, etc., totaling the sum of $21,232.02. Warren, either individually or as manager of Four Way Land Company, a corporation, produced 265 bales of cotton on the 400 acres, and this cotton was sold by Gin Company for the sum of $37,671.43, which sum Bank contends was converted by Gin Company.

Warren at one time owned the 400 acres upon which the cotton was grown, but he conveyed it to Four Way Land Company, Inc., hereinafter called Four Way, of which he was the manager and principal stockholder. The corporation was formed for the purpose of growing and selling crops. The deed conveying the land to the corporation was properly recorded in Zavala County. Warren had pledged all of his stock to Hartford Accident and Indemnity Company. Warren testified that he had an oral agreement with the corporation concerning the use of the 400 acres.

Appellant contends that under these facts a question was raised as to whether the cotton belonged to Warren or to the Corporation. No issue was requested by the Bank and none was submitted to the jury as to the ownership of the cotton. Warren gave the Bank the chattel mortgage in his name, and if he was not the owner of the cotton, then he had no right as an individual to create a lien on this cotton that would be binding on the true owner or on the Gin Company.

■ It occurs to us that the burden was upon the Bank to allege, prove and secure from the jury a finding that the cotton belonged to the mortgagor. Warren stated that he had an oral agreement with the corporation concerning the use of the 400 acres, but this testimony was not conclusive upon Gin Company. Bank alleged that the cotton was grown upon the 400 acres belonging to Four Way, that Warren had a lease contract with Four Way whereby he was entitled to farm the land for his own use, and therefore he was the owner of the crop when he gave the chattel mortgage in April, 1958. Bank failed to prove, and certainly did not conclusively prove, that Warren had a lease contract with Four Way, or the terms of any such lease if in fact one existed. Thus Bank failed to show that Warren was the owner of the crop at the time he gave the chattel mortgage. The burden was upon Bank to prove that it had a valid first mortgage upon the crop, and in order to do this it undertook to prove that the cotton crop was owned by Warren under a lease contract with Four Way, the owner of the land upon which the cotton was grown. In attempting to discharge this burden the Bank solicited from Warren the fact that he had an oral contract with Four Way concerning the use of the land. Warren

was taken on voir dire examination and admitted that he based his statement upon conversations which took place before the corporation was formed. He further testified there was conversation afterward but did not state with whom, or of what the conversation consisted. Ralph Cadwallader, Esq., who owned a share of stock in Four Way and was its secretary, testified that Warren was to stay in possession of the land, was to pay the taxes and was to pay the Travelers Insurance Company loan whenever he could, and to make other payments. He did not testify that the corporation leased the land to Warren. He further testified that there was nothing in the minutes of the corporation with reference to any lease contract.

This evidence is insufficient to show that Warren had a lease contract with Four Way, and if so what its terms were. These were bare conclusions or opinions of Cadwallader, without any basis of fact, and had no probative force. Webb v. Reynolds, Tex.Com.App., 207 S.W. 914.

■ There is a presumption that crops growing upon land belong to the owner of the land. In 15 Am.Jur., § 7, p. 199, it is stated: "The ownership of realty carries with it, as an incident thereto, the prima facie presumption of the ownership of both the natural products of the land and annually sown crops."

■ The fact that Warren was in possession of the land does not establish his ownership of the crop; being president and manager of the corporation, he was the proper person to be in possession. In 13 Am.Jur. p. 960, § 1008, it is stated: "The general rule that the possession of a trustee or agent is not deemed adverse to his cestui que trust or principal applies to the officers of corporations who have possession of land belonging to the corporation until they give notice to it of an intent to hold for their personal benefit." The Bank undertook to prove that Warren, and not Four Way, was the owner of the cotton because he had

leased the land from the corporation. This it failed to do. Rhea Mortgage Co. v. Lemmerman, Tex.Com.App., 10 S.W.2d 690; Trott v. Flato, Tex.Civ.App., 244 S.W. 1085.

■ Even if the evidence offered by Bank had been sufficient to raise a fact issue'as to whether Warren was the owner of the cotton crop at the time he gave the chattel mortgage to Bank, it would have been the Bank's duty to except to the court's charge for failure to submit an issue upon this matter and also to request an issue upon the same, and having failed to do either, waived its right to a jury finding on the issue. Rules 274 and 279, Texas Rules of Civil Procedure; Strauss v. LaMark, Tex., 366 S.W.2d 555; Zachry v. McKown, Tex.Civ. App., 326 S.W.2d 227; Schwarz v. Smith, Tex.Civ.App., 325 S.W.2d 407, writ ref. n. r. e., 160 Tex. 280, 329 S.W.2d 83; Long v. City of Austin, Tex.Civ.App., 265 S.W.2d 632.

Gin Company excepted to the court's charge for failure to submit the issue, and that is all that was required of it, this being an issue essential to Bank's cause of action, with the burden of proof on it. None of Bank's issues were submitted to the jury and none were requested. If Warren did not own the cotton crop at the time he gave the chattel mortgage it did not constitute a first lien in favor of Bank on the cotton.

■ Bank contends that Gin Company cannot claim that the cotton belonged to Four Way, unless it could show that it had a claim, title or interest in the cotton derived from Four Way. We do not agree. In the first place, the burden was upon Bank to show ownership in Warren before Gin Company would be required to show anything, and, secondly, if the cotton belonged to Four Way it did not belong to Warren, and this is true whether Gin Company had any claim, title or interest derived from Four Way or not. In this connection, Bank cites the case of Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949, holding in effect that a contract between a corporation and one of

its officers is not absolutely void if fair and free of fraud, but the trouble here is that Bank had failed to prove that any contract existed between Four Way and Warren. Bank also cites Phil H. Pierce Co. v. Rude, Tex.Civ.App., 291 S.W. 974. In that case a lease contract was made by the promoters of the corporation before it was formed and ratified and adopted by the corporation after it was formed. Here Bank has not shown that a lease contract was ever made, and has completely failed to show a ratification or adoption by Four Way of any contract after it was incorporated. If there was any evidence to this effect the question should have been submitted to the jury. It is quite clear that if a lease contract had been shown between Warren and Four Way, then Gin Company, not being a party to such lease contract, would not be allowed to set such contract aside for fraud or other reasons. The point is that Bank failed to discharge the burden resting on it of establishing the terms of a lease contract between Four Way and Warren.

Gin Company next contends that in any event Bank gave Warren permission to sell the cotton and thereby waived its alleged chattel mortgage lien. On this point L. A. Buescher, executive vice-president of Bank, testified as follows:

"At the time Mr. Warren was down there I asked him why he didn't get this cotton in and he said, 'They are gathering it there at the gin. They will account to you for the whole thing at the same time.' *I agreed*, and then I said 'If you are going to put it in the cotton loan, all right, otherwise, the cotton should be sold and applied on the note.'"

Mr. Buescher also testified that:

"This is customary, Mr. Petry, for the gin to harvest it; and

"Q: Was it your plan and did you anticipate that the cotton would be harvested, taken to the gin, sold and the proceeds brought to you for credit on the note?

"A: That is right. That is customary in every case I know of."

We feel that this testimony shows that the Bank had authorized Warren to dispose of the cotton and bring Bank the money. When the Bank authorized Warren to dispose of the cotton, it made Warren its agent to bring the money to the Bank, and if he failed to do so it was failure of Bank's agent.

■ Bank contends that in any event it did not authorize the Gin Company to sell the cotton. If it authorized Warren to dispose of the cotton he was at liberty to do so through any agency he might choose. Warren did not testify that he did not authorize Gin Company to sell the cotton. In fact, the record discloses that both the Bank and Warren knew of the manner in which Gin Company handled the gathering, ginning and selling of cotton, and did not object to it. Bank's complaint is not that the cotton was sold, but that Bank did not get the money. Under such circumstances the Bank waived its chattel mortgage lien.

The burden of proof being upon Bank to show that Warren was the owner of the cotton crop at the time he gave it the chattel mortgage, and even if there was some evidence of this fact, the Bank's failure to secure a jury finding on the matter waived the issue and therefore it cannot now recover on this basis. Rules 274 and 279, T.R.C.P.

The judgment of the trial court is reversed and the cause remanded to the trial court for rendition of judgment in keeping with this opinion.